UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
CLAUDE MICHAEL DAHAN,

                Plaintiff,

  -against-                                **MEMORANDUM AND ORDER**
                                               Case No. 10-CV-3743 (FB)
MICHAEL J. ASTRUE, COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
-------------------------------------------------------------x

*Appearances:*
*For the Plaintiff*:                            *For the Defendant*:
WILLIAM KAPLAN, ESQ.              LORETTA E. LYNCH, ESQ.
42-15 Crescent Street, Ninth Floor    United States Attorney
Long Island City, New York 11101     Eastern District of New York
                                                     By:  SETH D. EICHENHOLTZ, ESQ.
                                                          Assistant United States Attorney
                                                          271 Cadman Plaza East
                                                          Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

        Claude Michael Dahan seeks review of a final decision of the Commissioner of Social Security ("Commissioner"). Although the Commissioner granted Dahan's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), Dahan argues that he should have been found disabled as of an earlier date.

        Both Dahan and the Commissioner move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dahan seeks remand for reassessment of his onset date, while the Commissioner asks the Court to uphold the existing date. For the reasons stated below, Dahan's motion is granted and the Commissioner's is denied.

**I**

Dahan, a former salesperson, applied for benefits on April 12, 2007, alleging disability due to "numbness in extremities, lower back injury, hernia and high blood pressure." Administrative Record ("AR") at 169. He alleged that his impairments became disabling on June 1, 2005, but later amended the onset date to June 1, 2006. The amendment apparently reflected some uncertainty as to the date on which Dahan stopped working.

After Dahan's application was initially denied, he requested a hearing before an Administrative Law Judge ("ALJ"), which took place on April 29, 2009. In addition to reviewing medical records, the ALJ took testimony from Dahan, medical expert Bernard D. Gussoff, M.D., and vocational expert Ruth Baruch.

The ALJ issued his decision on June 2, 2009. He found that Dahan had had a number of severe impairments since his alleged onset date, but that they had not become disabling until May 1, 2007. In particular, the ALJ found that Dahan had a residual functional capacity for sedentary work until May 1, 2007, at which point one of his impairments -- degenerative disc disease -- equaled the criteria for Listing 1.04(A) on the Commissioner's list of automatically disabling impairments.

**A. Post-May 1, 2007 Condition**

In setting the onset date of Dahan's disability at May 1, 2007, the ALJ relied on Dr. Gussoff's analysis of the medical evidence. According to Dr. Gussoff, Listing 1.04(A) required evidence of three things: "You need a herniated disc, you need spinal stenosis, and you need nerve root impingement." AR at 41. Although the medical record

2

did not reflect all three, Dr. Gussoff found evidence of an impairment that was medically equivalent in severity.

First, he cited a May 30, 2007 report from consulting physician Justin Fernando, M.D. Dr. Fernando noted "disc space narrowing [at] L3-4, L5-S1" based on a contemporaneous x-ray. Second, Dr. Gussoff cited a May 27, 2007 report from treating physician Yosef Morad, M.D. Included in Dr. Morad's report were MRI interpretations noting bulging and herniated discs in the cervical spine, and "central herniation of the L2-L-3, L3-L4 & L4-L5 discs with compression of the thecal sac." AR at 289-90. Presumably referring to the reports, Dr. Gussoff said that "those two items" would establish an equivalence. AR at 40.

Dr. Gussoff incorrectly believed that the MRIs were contemporaneous with Dr. Morad's report. In fact, the MRIs were taken and interpreted in January and February 2002. When Dahan's counsel pointed that out, Dr. Gussoff's response was confused. He first stated that he could not find an equivalence "back to '02" based solely on a herniated disc. AR at 41. He then said, however, that he could "make an equivalence out of" Dr. Morad's report, but continued to assert (erroneously) that the MRIs underlying the report dated only to May 27, 2007. AR at 42.

## B. Pre-May 1, 2007 Condition

The finding of a listed impairment made it unnecessary for the ALJ to determine Dahan's post-May 1, 2007 RFC. With respect to the pre-May 1, 2007 RFC, the ALJ gave "significant weight" to the opinion of Dr. Gussoff. At first, Dr. Gussoff stated that he was unable to provide an opinion because he had "nothing in the file" regarding

3

Dahan's pre-May 1, 2007 limitations. AR at 55; *see also id.* ("[Q: W]hat in your opinion would've been the limitations for the Claimant prior to his equaling the listing in May of '07? [A:] Well, Your Honor, that's kind of difficult to answer."). After prodding from the ALJ, he equivocally suggested that Dahan "had functional limitations which were probably -- certainly not light work. Possibly sedentary." AR at 56.

In addition, the ALJ gave "considerable weight" to the opinion of Alex Katz, DPM, Dahan's treating podiatrist. On May 8, 2007, Dr. Katz submitted a written statement opining that Dahan had no functional limitations at all. Dr. Katz treated Dahan for heel and foot pain, and was not asked to opine on limitations imposed by any other impairment.

By contrast, the ALJ gave "some weight . . . though not more" to the pre-May 1, 2007 opinions of Dr. Morad. On June 6 and October 5, 2006, Dr. Morad wrote letters opining that Dahan's back pain rendered him "unable to work for now." AR at 343, 354. The ALJ described these opinions as "general statements which were not wholly supported by his own findings or by the evidence as a whole." AR at 17.

Finally, the ALJ gave "limited weight" to Dahan's own description of his symptoms and limitations. He found that description "not wholly credible" because "the medical records simply fail to confirm the accuracy of the claimants's assertions." AR at 16. He noted, in particular, that Dahan had been able to work for several years after the onset of his back problems, and that the impairments did "not appear to have increased in severity until the established onset date." AR at 16. He also noted that Dahan's treatment had been conservative and included medications that were "not unusual for either type or

4

dosage," and that appeared "to have been effective and without adverse side effects." AR at 17.

Applying his finding that Dahan could perform sedentary work prior to May 1, 2007, the ALJ found that Dahan could perform his past work and, in the alternative, could perform other work existing in significant numbers in the national economy. Accordingly, he awarded benefits, but only as of May 1, 2007. After the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner. Dahan timely sought judicial review.

## II

In reviewing the Commissioner's decision, "a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). Substantial evidence is "more than a mere scintilla," and should be that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations marks and citation omitted).

As noted, Dahan contends that the ALJ should have found him disabled as of June 1, 2006. The determination of onset date -- that is, the date on which a claimant became unable to perform any substantial gainful activity -- is governed by Social Security Ruling 83-20.

For disabilities of non-traumatic origin (such as degenerative disc disease), "the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." SSR

5

83-20, 1983 WL 31249, at *2. The claimant's alleged onset date forms the "starting point" for the analysis, and "should be used if it is consistent with all the evidence available." *Id.* at *2-*3. The day the claimant stopped working can also be "of great significance." *Id.* at *2. In cases of conflict, however, neither can trump the medical evidence: "[T]he established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." *Id.* at *3.

When the evidence does not directly establish an onset date, one must be inferred:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis.

*Id.* In such cases, the ALJ "should call on the services of a medical advisor" to explain "what medical presumptions can reasonably be made about the course of the condition." *Id.* Although the date an impairment reaches the severity of a listed impairment is sufficient to establish one, a progressive impairment may become disabling before it reaches listing severity. In such cases, RFC and other vocational factors "can contribute to the determination of when the disability began." *Id.*

Dahan's challenge to the ALJ's onset determination has two components. First, he argues that his back impairment equaled the severity of Listing 1.04(A) before May 1, 2007. Second, he argues that, even if his impairment was not of listing severity, the ALJ

6

erroneously determined that his RFC allowed sedentary work until that date. The Court addresses those arguments in turn.

**A. Listed Impairment**

Although Dahan faults the ALJ's application of SSR 83-20 in many respects, the central issue is whether his selection of May 1, 2007 as the onset date was consistent with the medical evidence. The present record does not admit of a clear answer to that question.

As explained above, the ALJ adopted Dr. Gussoff's opinion as to when Dahan's back impairment equaled Listing 1.04(A) in severity. But that opinion is subject to two interpretations, one of which was tainted by Dr. Gussoff's erroneous belief that Dahan's MRIs dated only from 2007.

One interpretation is that Dr. Gussoff thought that Dahan's impairment did not reach listing severity until the disc space narrowing reflected in the May 2007 x-ray appeared. On that reading, Dr. Gussoff's belief as to the date of the MRIs was of no consequence because the MRIs revealed multiple herniations, but not the disc space narrowing.

On the other hand, Dr. Gussoff was apparently able to, in his words, "make an equivalence out of" Dr. Morad's report alone. In that case, his misunderstanding becomes significant. Although the report itself is dated May 27, 2007, the evidence underlying it was the 2002 MRIs. Dr. Gussoff could not plausibly claim that Dahan's impairment did not reach listing severity until May 1, 2007, based solely on evidence that reflected the same condition more than five years earlier.

7

Even if Dr. Gussoff's opinion was based on a combination of the 2007 x-ray and the 2002 MRIs, it is possibly flawed in another respect. His choice of words implies that he believed he could not establish an equivalence -- and, therefore, an onset date -- until a particular condition was reflected in the objective medical evidence. *See* AR at 41 ("I don't have anything until the MRI."). But Social Security Ruling 83-20 explicitly recognizes that some conditions arise before they appear on x-rays or MRIs, and directs medical experts to use their expertise and good judgment to derive an onset date based on the likely course of a progressive impairment. Dr. Gussoff was not asked to draw an inference on that basis, and the Court suspects that he did not do so *sua sponte*.

Until these uncertainties are resolved, the Court cannot say whether the ALJ's onset date was based on substantial evidence. Accordingly, remand is required. *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) ("[W]e do believe that the crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.").

**B. RFC Assessment**

If, on remand, the ALJ finds a listed impairment dating from Dahan's alleged onset date, then the pre-May 1, 2007 RFC assessment becomes irrelevant. Because that is not the only possible outcome, however, the Court must address Dahan's challenge to that assessment.

Dahan argues that the ALJ failed to follow the treating-physician rule with respect to Dr. Morad's 2006 letters. According to that rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling

8

weight' so long as it 'is well-supported by medically acceptable clinical and laboratory or diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also* 20 C.F.R. § 416.927(d)(2) (establishing same rule for SSI claims).

Dr. Morad's letters, however, did not relate to the nature or severity of Dahan's impairments. They were, rather, statements that Dahan was "unable to work for now." AR at 343, 354. Under the Commissioner's regulations, ALJs "will not give any special significance to the source" of such statements. 20 C.F.R. §§ 404.1527(e)(3), 416.927(e)(3). Instead, they are required only to give "good reasons" for whatever weight they decide to give a treating source's statement. *See id.* §§ 404.1527(d)(2), 416,927(d)(2).

The ALJ cited the general and conclusory nature of Dr. Morad's letters as grounds for giving them limited weight. Those reasons are sufficient to withstand Dahan's challenge.

It does not follow, however, that the ALJ's RFC assessment was supported by substantial evidence. As noted, he relied heavily on the opinions of Drs. Gussoff and Katz; each is problematic. Dr. Gussoff offered an equivocal assessment of "possibly sedentary" only after some persuasion, and with absolutely no further explanation. Dr. Katz offered an optimistic assessment of Dahan's foot and heel pain, but no insight into the effects of his back condition. No reasonable mind could accept these opinions -- even taken together -- as adequate support for the ALJ's conclusion that Dahan could perform sedentary work until May 1, 2007.

That is not to say that the record compels the conclusion that Dahan was

9

disabled before that date. As the ALJ explained, Dahan was able to continue working for several years after the disc herniations arose, and followed a generally conservative course of treatment. Nevertheless, there is essentially an absence of medical evidence as to Dahan's functional limitations prior to May 1, 2007. Remand to cure that deficiency is the proper remedy. *See Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) ( "Where there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the Commissioner for further development of the evidence." (internal quotation marks, citations and alteration omitted)).

### III

Dahan's motion for judgment on the pleadings is granted, the Commissioner's motion is denied. Accordingly, the case is remanded for further proceedings.

On remand, the ALJ shall reassess, in accordance with this Memorandum and Order, the date on which Dahan's back impairment equaled Listing 1.04(A) in severity. He must also develop the record and reassess Dahan's RFC for the period, if any, between the alleged onset date and the date the impairment reached listing severity.

**SO ORDERED.**

s/ Judge Frederic Block
_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 23, 2011

10